## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

DONALD D. GADDIS,        )
                                  )
             Plaintiff,      )
                                  )
vs.                         )        **Case No. 19-cv-781-DWD**
                                  )
BRANDON ZANOTTI,       )
                                  )
            Defendant.    )

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

On July 19, 2019, Plaintiff Donald D. Gaddis filed suit against Defendant Brandon Zanotti, State's Attorney for Williamson County, Illinois, alleging that he was being denied his constitutional right to bail and was facing retaliation for exercising his First Amendment rights. Gaddis seeks to certify a class of similarly situated individuals who were denied their right to bail when they were required to submit to a mental health evaluation at their expense without justification. His remaining claims are not brought on behalf of a class. Now before the Court are Defendant's motion to dismiss for failure to state a claim and for lack of jurisdiction (Doc. 14) and his motion to strike class allegations (Doc. 15). For the reasons delineated below, the Court grants Defendant's motion to strike and grants in part and denies in part the motion to dismiss.

### FACTUAL ALLEGATIONS

Beginning in the fall of 2017, Plaintiff Donald D. Gaddis placed numerous signs in his yard and in public places. The signs commented on what he describes as matters of

1

public concern with respect to policies, practices, and decisions of local government officials, including Defendant Brandon Zanotti. Gaddis alleges that, in response to his signs, he faced a range of unconstitutional conduct by Zanotti and by people under Zanotti's control, including the bringing of many criminal cases and the filing of several orders of protection against Gaddis. He takes issue with Zanotti handling any criminal or civil actions involving him due to what he describes as a conflict of interest because some of Gaddis's signs targeted Zanotti personally. Gaddis seeks both money damages and injunctive and declaratory relief.

In Count I, Gaddis alleges that his troubles began on or about June 29, 2018, when he was arrested by officers with the Marion Police Department and was charged with a Class 4 felony and a misdemeanor. He describes the arrest as a false arrest. On July 2, 2018, Gaddis posted bail and was released. As a condition of his release, Gaddis was ordered to submit to and pay for a mental health evaluation, a condition he alleges Zanotti's office inappropriately demanded and received without a hearing. On July 18, 2018, a special prosecutor was appointed, and the felony charge was dismissed on August 13, 2018. Gaddis did not participate in the ordered evaluation.

On or about November 30, 2018, Gaddis again was arrested on a Class 4 felony by officers with the Johnston City Police Department. Zanotti, or an attorney in his office, requested bond be set at $50,000, but the judge set bond at $30,000. Gaddis posted bail, and he was again ordered to submit to a mental health evaluation at his expense without being provided with a reason for the examination. Gaddis alleges that an Assistant State's Attorney requested the condition in retaliation for the signs that were critical of Zanotti

2

and other local officials. On December 10, 2018, a special prosecutor was appointed. Gaddis moved to reconsider the appropriateness of the condition requiring a mental health evaluation on January 9, 2019, and the state court struck the condition in May 2019. He did not participate in or pay for an evaluation.

Gaddis seeks to bring his claim about the constitutionality of the mental health evaluation condition on behalf of a class of similarly situated individuals. He alleges that Zanotti has a pattern and practice of conditioning release upon a mental health evaluation at defendants' expense without adequate justification. Gaddis further claims that defendants are without redress because there is no right to appeal their bail requirements. He suggests that the evaluations also infringe upon criminal defendants' Fifth Amendment rights against self-incrimination.

According to Gaddis, a class should be certified to address whether Zanotti infringes on criminal defendants' rights by including a mental health evaluation as a condition of release and whether Zanotti should be required to provide a factual basis for the bond condition at a hearing before the condition is imposed. Plaintiff seeks money damages in the amount of attorneys' fees incurred resisting the mental health evaluation conditions and injunctive relief preventing Defendant from requesting a mental health evaluation unless a number of conditions are met, including a showing of a compelling state interest before imposing the condition.

In Count II, Gaddis alleges that he has faced retaliation in the form of at least 10 different criminal and traffic cases in which Zanotti or members of his office appeared for bail hearings or assisted individuals in filing for orders of protection, even though Zanotti

3

had the above-described conflict of interest. He also alleges that Zanotti's office refused to assist him in filing for orders of protection against individuals who falsely accused or harassed him. In addition to money damages, Gaddis seeks an injunction prohibiting Zanotti from filing criminal or civil cases against him and from appearing at initial appearances and bail hearings in criminal cases involving Gaddis.

In Count III, Gaddis alleges that he was denied his constitutional right to bail when he was arrested twice on the same misdemeanor warrant. On or about April 17, 2019, Gaddis was arrested and charged with a misdemeanor. He posted bond in the amount of $150, and he was released. On April 18, 2019, Gaddis was arrested a second time for the same charges in the same case. He had to post a second bond in the amount of $300 to be released. He alleges that Zanotti is responsible for his re-arrest because Zanotti presented the warrant for execution a second time even though Gaddis had already been arrested and released. He claims that Zanotti has a policy and practice of failing to adequately train, supervise, and control his personnel and encourages the type of misconduct that led to Gaddis's re-arrest. He seeks money damages, including damages for emotional distress and punitive damages.

In Count IV, Gaddis alleges that Zanotti has an ongoing conflict of interest with respect to criminal cases against Gaddis. He asks the Court for a declaratory judgment stating that Zanotti has a conflict of interest that prohibits him from participating in any manner in the prosecution of Gaddis for any alleged crimes. He also seeks injunctive relief barring Zanotti from participating in any manner in the prosecution of Gaddis in any alleged crimes in the future.

## MOTION TO STRIKE

A motion to strike class allegations is analyzed under Federal Rule of Civil Procedure 23. As is true with a motion for class certification, the plaintiff bears the burden of showing class certification is appropriate. *See Valentine v. WideOpen West Finance, LLC*, 288 F.R.D. 407, 414 (N.D.Ill. 2012). To obtain class certification under Rule 23, a plaintiff must satisfy each requirement of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one subsection of Rule 23(b). *See Harper v. Sheriff of Cook County*, 581 F.3d 511, 513 (7th Cir. 2009); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

Here, Plaintiff cites both Rule 23(b)(2) and Rule 23(b)(3) as potential bases for certifying a class. Rule 23(b)(2) requires showing that the "party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Under Rule 23(b)(3), Plaintiff must establish that "questions of law or fact common to all class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy**."** If the requirements of Rule 23(a) and 23(b) are satisfied, the class also must be "identifiable as a class," meaning that the class definitions must be definite enough that a class can be ascertained. *Oshana*, 472 F.3d at 513 (citations omitted). Failure to satisfy any of these requirements precludes certification of a class, or, in this instance, favors striking the class allegations.

5

Gaddis defines the proposed class as including:

> All persons from 5 years prior to the filing of this action [on July 19, 2019]: 1) who were required to seek a mental evaluation as a condition of bail; 2) who were required to pay for the evaluation; [and] 3) who where [sic] require[d] to undergo the mental evaluation without any showing of need for the State to violate of [sic] the criminal defendant's constitutional rights.

(Doc. 1, p. 6). Defendant moves to strike the class allegations because the complaint fails to establish commonality and typicality under Rule 23(a) and because it proposes a prohibited "fail safe" class. Defendant also argues that the complaint fails to satisfy Rule 23(b)(2) and 23(b)(3).

As an initial note, Plaintiff's response to Defendant's 11-page motion is a mere three paragraphs in length. It cites a single case about the burden of proof for bail conditions in Illinois, but it fails to analyze the issues of commonality, typicality, or whether the proposed class is a "fail-safe" class. Similarly, the response fails to address Defendant's arguments as to Rule 23(b).[1] Plaintiff instead argues that reviewing case files in Williamson County will allow class members to be identified, and he reiterates his position that it is too easy for prosecutors to request and receive a mental health evaluation condition for release. The undeveloped nature of Plaintiff's response alone warrants granting Defendant's motion to strike because it is clear that Plaintiff does not satisfy his burden of establishing that certifying a class is appropriate now or in the

---

[1] For example, Plaintiff's response does not mention the words common or commonality, typical or typicality, fail or fail-safe, or predominate or predominance. It also does not mention Rule 23 or any other Rule of Civil Procedure.

future. In addition, however, several of Defendant's arguments in favor of striking the class allegations are well-taken.

Rule 23(a)(2) requires that "questions of law or fact common to the class" must exist before a class may be certified. FED. R. CIV. P. 23(a)(2). Courts have generally described this requirement as a low hurdle to surmount, and it is satisfied when a common nucleus of operative facts exist. *See Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421 (N.D. Ill. 2007) (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). For purposes of 23(a)(2), even a single common contention, the determination of which resolves an issue that is central to the validity of the claims, is sufficient. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). What matters is the "capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 351 (emphasis in original). Courts have found that a sufficient common nucleus of operative fact exists where a defendant has engaged in standardized conduct toward members of the class. *See Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)(citing cases).

Plaintiff, had he provided a developed response, may have cleared the low hurdle of identifying a single common question that can be answered with a common answer with respect to his second alleged common question: "whether Zanotti should be constitutionally required to show the factual basis for the condition at a hearing wherein the class member may subject Zanotti's evidence to cross examination and constitutionally mandated rules of evidence." (Doc. 1, p. 6). If there is a flaw in the process for seeking the condition, that could result in the single required common question to satisfy commonality under Rule 23(a)(2).

7

Defendant is correct, however, that Plaintiff's claim lacks typicality. A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006)(citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). The requirement is closely related to commonality and is meant to ensure that the named plaintiff's claims have the same essential characteristics as the claims of the class at large. *Id.* The starting point for typicality analysis is that "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011).

Here, Plaintiff attempts to bring a claim on behalf of individuals who have had to pay for a mental health evaluation as a condition of release, but Plaintiff challenged the condition in his criminal case and had it removed. He has not undergone a mental health evaluation at his own expense like the members of his proposed class. Plaintiff's claim also is not typical because he alleges that the imposition of the condition in his case was retaliatory in nature because of the signs he posted, as opposed to the result of an unfair but routine process, as it allegedly was for the proposed class members.

Defendant also points out another flaw fatal to the question of typicality. The circuit court determines which conditions to impose in a criminal case, and the courts are empowered with broad discretion to impose "conditions that are reasonably necessary to assure the defendant's appearance in court, protect the public from the defendant, or prevent the defendant's unlawful interference with the orderly administration of justice."

725 ILCS § 5/110-10(b). This inquiry requires a unique, case-by-case analysis by a state court judge. These individualized analyses are based on the facts of an alleged crime and on the unique circumstances of each defendant, destroying typicality. The absence of typicality requires that the class allegations be stricken.

Defendant also points out that Plaintiff seeks to certify a prohibited "fail-safe" class. A "class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Kohen v. Pacific Inv. Management Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009). The Seventh Circuit has explained:

> The problem posed by class members whose claims may fail on the merits for individual reasons is the obverse of a different problem with class definition: the problem of the "fail-safe" class: one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim. Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment.

*Messner v. Northshore University HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)(citations omitted).

Defendant argues that Plaintiff's class is a classic "fail-safe" class because either a mental evaluation was required "without any showing of need for the State to violate … the criminal defendant's constitutional rights," making the criminal defendant a class member, or the individual's rights were not violated in the imposition of the condition, leaving that person outside of the class definition. Defendant's argument is compelling and in line with the guidance from the Seventh Circuit, and Plaintiff failed to address this argument in his response, making striking the class allegations on this basis appropriate.

Defendant also moves to strike the class allegations for failing to satisfy Rule 23(b).

To the extent that Plaintiff seeks certification under Rule 23(b)(3), he must show (1) that the questions of law or fact common to the members of the proposed class predominated over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy. *Messner*, 669 F.3d at 811. The Rule 23(b)(3) "inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy," with the purpose being to determine whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Rule 23(b)(3) "poses the question whether a single suit would handle the dispute better than multiple suits." *In re Aqua Dots Prods. Liab. Litig.* 654 F.3d 748, 752 (7th Cir. 2011). The Court considers class members' interest in individually controlling separate actions, the extent of any litigation already begun by class members, the desirability of concentrating the litigation in this form, and likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3)(A)-(D).

While the proposed class may satisfy commonality under Rule 23(a), Rule 23(b)(3) requires more than a single question of common fact, and Plaintiff fails to present a developed argument that common questions predominate. As discussed above, imposition of conditions of release in a criminal case requires a highly individualized, case-by-case assessment such that common questions cannot predominate in determining why the condition was imposed, nor could there be a sufficiently cohesive class to warrant adjudication by representation.

Defendant points to *Harper v. Sheriff of Cook County*, where the Seventh Circuit affirmed denial of class certification of a class of pretrial detainees who alleged that the

sheriff unconstitutionally delayed releasing them after bond was posted. 581 F.3d 511 (7th Cir. 2009). The Seventh Circuit found that the class lacked predominance of common issues because the constitutionality of each extended detention depended on whether it was reasonable to delay under individual circumstances of each delay. *Id.* at 515. Like in *Harper*, the constitutionality and reasonableness of imposition of a mental health evaluation condition depends upon circumstances unique to each criminal defendant. As a result, Gaddis's claim and any related claims of other criminal defendants are best resolved through individual, rather than class, litigation.

Defendant also argues that a class-wide injunction like the one Gaddis seeks under Rule 23(b)(2) would not provide relief to class members. Rule 23(b)(2) is the "appropriate rule to enlist when the plaintiffs' primary goal is not monetary relief, but rather to require the defendant to do or not do something that would benefit the whole class." *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 441 (7th Cir. 2005). Here, Rule 23(b)(2) is inappropriate for any money damages the proposed class would seek. With respect to the injunctive relief sought, the Court must consider whether a "single injunction or declaratory judgment would provide relief to each member of the class … [or whether] each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011)(emphasis in original).

Defendant argues that Plaintiff is asking for an order enjoining Zanotti from requesting imposition of a mental health evaluation condition for bond unless certain conditions are met and that such an injunction would not protect the class members from

imposition of a mental health evaluation at their expense absent a showing of need, as the state court judge can order the condition with or without a request from a prosecutor. Plaintiff does not respond to this argument. In the absence of a response from Plaintiff, the Court accepts Defendant's position, as it is consistent with controlling precedent.

Defendant filed a detailed motion to strike class allegations in this action. Plaintiff's brief response ignored many, if not all, of Defendant's arguments and failed to establish that the class allegations should not be stricken. It is Plaintiff's burden to establish that Rule 23's requirements are satisfied, and that burden is not satisfied here. Accordingly, Defendant's motion to strike class allegations is granted. Plaintiff may proceed on Count I only in his individual capacity.

## MOTION TO DISMISS

Defendant moves to dismiss Plaintiff's complaint for failure to state claim under Rule 12(b)(6) and for lack of subject matter jurisdiction under Rule 12(b)(1). A complaint must include enough factual content to give the opposing party notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009). To satisfy the notice-pleading standard of Rule 8, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" in a manner that provides the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)(citing *Twombly*, 550 U.S. at 555 and quoting Fed. R. Civ. P. 8(a)(2)). In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must "examine whether

the allegations in the complaint state a 'plausible' claim for relief." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)(citing *Iqbal*, 556 U.S. at 677-678). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," rather than providing allegations that do not rise above the speculative level. *Id.*

Federal Rule of Civil Procedure 12(b)(1) requires dismissal if the Court lacks jurisdictional authority over the subject matter of the dispute before it. When a party challenges subject matter jurisdiction, the Court first must resolve "whether a factual or facial challenge has been raised." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015)(citing *Apex Dig. Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009)). If a challenge contends that a plaintiff's complaint lacks sufficient factual allegations to establish subject matter jurisdiction, the challenge is a facial one, and courts "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Silha*, 807 F.3d at 173. A factual challenge, however, contends that "there is *in fact* no subject matter jurisdiction." *Apex Digital, Inc.*, 572 F.3d at 443 (citing reference omitted)(alteration in original). Here, no outside evidence is before the Court, and the parties focus on the sufficiency of Plaintiff's complaint. As such, the Court will treat Defendant's challenge as a facial challenge. As the party invoking federal jurisdiction, however, Plaintiff bears the burden of establishing that subject matter jurisdiction exists. *Silha*, 807 F.3d at 173.

### 1. Sovereign Immunity and Prosecutorial Immunity

Defendant first challenges Gaddis's complaint as barred by sovereign immunity

and prosecutorial immunity. To the extent that Gaddis's complaint seeks money damages, his claims are barred. The Eleventh Amendment bars suits in federal court against state officials acting in their official capacities. *Ind. Prot. & Advoc. Servs. v. Ind. Family & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010). Illinois extends that immunity to state's attorneys. *See Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994)(citing reference omitted). Immunity does not extend to (1) suits against state officials seeking prospective equitable relief for ongoing violations of federal law; (2) suits by an individual against a state if Congress has abrogated the state's immunity from suit; and (3) suits against a state that has properly waived its sovereign immunity and consented to suit in federal court. *MCI Telecommunications Corp. v. Ill. Commerce Comm'n*, 183 F.3d 558, 563 (7th Cir. 1999). The Eleventh Amendment does, however, bar money damages against state officials in the absence of a waiver of sovereign immunity. No such waiver applies here, and Plaintiff's response only argues that his claims for injunctive and declaratory relief are not barred, seemingly conceding that he cannot pursue money damages from Zanotti.

In addition to the Eleventh Amendment's bar on money damages in this action, "prosecutors are absolutely immune from suits for monetary damages under § 1983 for conduct that is 'intimately associated with the judicial phase of the criminal process.'" *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003)(citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Gaddis raises no argument that the conduct complained of in the complaint is not that which is intimately associated with the judicial phase of the criminal process or that it falls outside the scope of Zanotti's duties as an officer of the court. Furthermore, he

does not suggest that Zanotti's actions were investigative or administrative in nature. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 341-343 (2009). As such, prosecutorial immunity extends to Zanotti in this action and bars recovery of money damages. Like sovereign immunity, prosecutorial immunity does not bar claims for prospective relief against Zanotti. *See Smith*, 346 F.3d at 742.

Counts I and II seek monetary damages in addition to injunctive relief. They are dismissed in part as barred by the Eleventh Amendment and by prosecutorial immunity to the extent that they seek monetary recovery. Count III seeks only monetary damages and is dismissed as barred by the Eleventh Amendment and by prosecutorial immunity. Count IV seeks only prospective relief and is not barred by the Eleventh Amendment or by prosecutorial immunity.

### 2. *Rooker-Feldman* Doctrine

Defendant argues that the Court lacks subject matter jurisdiction over all of Plaintiff's claims based on the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine is named for two United States Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). It "precludes lower federal court jurisdiction over claims seeking review of state court judgments … no matter how erroneous or unconstitutional the state court judgment may be." *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002)(citation omitted). It is a "narrow doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and

inviting district court review and rejection of those judgments.'" *Lance v. Dennis*, 546 U.S. 459, 464 (2006)(quoting *Exxon Mobil Corp. v. Saudi Basic Industries*, 544 U.S. 280, 284 (2005)).

In *Jakupovic v. Curran*, the Seventh Circuit explained how and why lower courts should apply the *Rooker-Feldman* doctrine:

> Lower federal courts are not vested with appellate authority over state courts. … The rationale for the doctrine is that no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it. The initial inquiry, then, is whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim. To make this determination, we ask whether the federal claims either "directly" challenge a state court judgment or are "inextricably intertwined" with one.

850 F.3d 898, 902 (7th Cir. 2017). In *Jakupovic*, the plaintiff was a pretrial detainee who challenged his detention because he was granted release with electronic monitoring, but he was not released because he did not have a residence in the county where he was charged, which was required for the electronic monitoring program. The Seventh Circuit found that his claims were inextricably intertwined with the state court's judgment because it would call into question the propriety of the bond condition. The Court also found that alternative avenues for relief were available, like moving for reconsideration or moving to modify bond conditions, both of which the plaintiff did.

While it appears at first glance that Gaddis's claims, particularly his claim related to bond conditions in Count I, similarly would be barred by the *Rooker-Feldman* doctrine as inextricably intertwined with state court judgments, the Seventh Circuit has been clear that the doctrine does not apply to lawsuits involving interlocutory orders. *See Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018). Here, Gaddis's criminal cases were ongoing at

the time he filed suit, and the *Rooker-Feldman* doctrine does not apply where a state court's "judgment was not rendered before the district court proceedings commenced." *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005). As a result, they are not barred by the *Rooker-Feldman* doctrine.

### 3. Preliminary Injunction

Injunctions are extraordinary equitable remedies that are to be granted in civil cases only when specific criteria are clearly met by the movant. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The plaintiff must show four elements for an injunction: (1) plaintiff is likely to succeed on the merits; (2) without an injunction irreparable harm against the plaintiff is likely; (3) the harm likely to be suffered by the plaintiff would be greater than the harm the injunction would inflict on defendants; and (4) the injunction is in the public interest. *Id.* The greater the likelihood that the plaintiff will succeed on the merits of the case, the less significant the likely harm against the plaintiff must be in relation to the harm the defendant will likely suffer due to an injunction. *Id.*

Defendant moves to dismiss Count IV only to the extent that Gaddis seeks a preliminary injunction. It is not clear from the complaint that Gaddis seeks preliminary relief, but he also did not respond to Defendant's argument. Plaintiff bears the burden of showing that preliminary relief is appropriate. His complaint, without additional argument or support, fails to establish that preliminary relief is appropriate in this action. To the extent that Count IV seeks preliminary relief, the request is denied.

### 4. *Younger* abstention

17

Defendant's final request is that the Court stay this matter pursuant to the abstention doctrine in *Younger v. Harris*, 401 U.S. 37, 43-44 (1971). Under *Younger*, abstention is required if "ongoing state proceedings [] are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as not extraordinary circumstances exist which would make abstention inappropriate." *Green v. Benden*, 281 F.3d 661, 666 (7th Cir. 2002). *Younger*, itself, "exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceedings, federal courts must refrain from enjoining the state prosecution." *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). Abstention has been extended to "state civil proceedings that are akin to criminal prosecutions, or that implicate a State's interest in enforcing the orders and judgments of its court." *Id.* at 72-73 (internal citations omitted). "*Younger* holds that federal courts must abstain from taking jurisdiction over federal constitutional claims that may interfere with ongoing state proceedings." *Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013)(citation omitted).

In Count I, Gaddis asks the Court to enter an injunction barring Defendant, in his role as State's Attorney, from seeking to include a mental health evaluation as a condition of release absent a showing of a compelling state interest. In Count II, Gaddis seeks an injunction barring Zanotti from instituting any criminal or civil actions against him and barring attorneys working for Zanotti from appearing on behalf of the State of Illinois in any criminal proceedings. Similarly, in Count IV, Gaddis seeks a declaration that Zanotti has a conflict of interest and injunctive relief barring Zanotti from prosecuting him in the

future. All of these requests for prohibitory or mandatory declaratory and injunctive relief ask the Court to involve itself in purported constitutional issues that may be litigated during the course of Gaddis's criminal cases or civil proceedings that are akin to criminal prosecutions. *See Majors v. Engelbrecht*, 149 F.3d 709, 712 (7th Cir. 1998)(noting that *Younger* can apply to requests for prohibitory or mandatory relief from a state proceeding).

The parties do not dispute that the relevant state court proceedings are judicial in nature or that they implicate important state interests. Instead, Gaddis challenges whether he has an adequate opportunity for review of his constitutional claims. The record reflects that he does. In one of his criminal cases, Gaddis was able to seek reconsideration of the mental health evaluation condition, and he succeeded in having the condition lifted. As noted in the *Rooker-Feldman* context in *Jakupovic*, there are other available methods for challenging conditions of bond like moving to modify or reconsider inappropriate or illegal conditions.

Similarly, the State of Illinois has a statute to address potential conflicts of interest for State's Attorneys:

> The court on its own motion, or an interested person in a cause or proceeding, civil or criminal, may file a petition alleging that the State's Attorney has an actual conflict of interest in the cause or proceeding. The court shall consider the petition, any documents filed in response, and if necessary, grant a hearing to determine whether the State's Attorney has an actual conflict of interest in the cause or proceeding. If the court finds that the petitioner has proven by sufficient facts and evidence that the State's Attorney has an actual conflict of interest in a specific case, the court may appoint some competent attorney to prosecute or defend the cause or proceeding.

55 ILCS 5/3-9008(a-10). The complaint references multiples cases where a special prosecutor was appointed due to conflict issues. There is nothing to suggest that state court remedies for potential conflicts of interest are unavailable to Gaddis at this time. Additionally, questions of false arrest or of being charged bond a second time may be raised in motions before the trial court, such that alternative means for addressing alleged constitutional issues exist.

Upon review, Gaddis's requested relief could interfere with state criminal proceedings and could implicate a State's interest in enforcing its orders and judgments. As such, federal abstention is appropriate, and this case shall be stayed until the state proceedings at issue have ended. This ruling is consistent with the Court's February 26, 2019 Order in *Gaddis v. Demattei, et al.*, 18-cv-1464-DWD.

## CONCLUSION

For the above-stated reasons, Defendant's motion to strike class allegations (Doc. 15) is **GRANTED**. Count I may proceed only as to Plaintiff's individual claim and not as a class action. Defendant's motion to dismiss (Doc. 14) is **GRANTED in part** and **DENIED** in part. Count III is dismissed as barred by the Eleventh Amendment and by prosecutorial immunity. Counts I and II are dismissed to the extent that Plaintiff seeks money damages. Plaintiff's requests for injunctive and declaratory relief only may proceed in Counts I, II, and IV. No preliminary injunction shall issue. Further, this case is **STAYED** in its entirety pursuant to the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 43-44 (1971). The parties shall submit a joint status report on the progress of Plaintiff's

pending state court actions on or before February 1, 2021, unless events before that date (e.g. the conclusion of all relevant pending actions) warrant an earlier report. As a result of the stay, the motion to stay discovery (Doc. 30) and the motion for extension of time to complete discovery (Doc. 34) are **DENIED as MOOT**.

      **SO ORDERED.**

      Dated: October 30, 2020

_____
**DAVID W. DUGAN**
United States District Judge